TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
MARIAM KALOUSTIAN (Cal. Bar No. 236702)
Assistant United States Attorney
Deputy Chief, Asset Forfeiture & Recovery Section
THI HOANG HO (Cal. Bar No. 293978)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
ROBERT K. QUEALY[1]
Special Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0596
    Facsimile: (213) 894-0141
    E-mail:   Thi.Ho@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>MAXIMO JORDAN NAVARRETE-CONTRERAS,<br><br>      Defendant. | No. 2:24-cr-00734-SVW-1<br><br>PLEA AGREEMENT FOR DEFENDANT<br>MAXIMO JORDAN NAVARRETE-CONTRERAS |

    1.   This constitutes the conditional plea agreement between MAXIMO JORDAN NAVARRETE-CONTRERAS ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case pursuant to Federal Rule of Criminal Procedure 11(a)(2).  This agreement is limited to the USAO and cannot

---

[1] Authorized to Practice Pursuant to Local Rule 83-2.1.4.2

bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one through nine and thirteen of the indictment in <u>United States v. Maximo Jordan Navarrete-Contreras</u>, No. 2:24-cr-00734-SVW-1, which charge defendant with distribution of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (count one); conspiracy, in violation of 18 U.S.C. § 371 (count two); engaging in the business of dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A) (count three); felon in possession of a firearm or ammunition, in violation of 18 U.S.C. § 922(g)(1)(counts five through nine); and possession of a machinegun, in violation of 18 U.S.C. § 922(o)(1) (thirteen).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

3.   Defendant and the USAO agree that defendant's entry of guilty pleas pursuant to paragraph 2(a) above will be conditional, in that defendant reserves the right, on appeal from the judgment, to seek review of the adverse determination of the government's Motion in Limine No. 1 to Preclude Defendant From Raising Entrapment Defense (United States v. Maximo Jordan Navarrete-Contreras, No. 2:24-cr-00734-SVW-1, Dkt. #92).  If defendant prevails on appeal, defendant will be allowed to withdraw defendant's guilty pleas.

4.   Defendant further agrees:

a.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the following:

i.   19 rounds of Igman 5.56x45 caliber ammunition;

ii.  58 rounds of Lake City Army Ammunition Plant 5.56x45 caliber ammunition;

iii. Eight rounds of Lake City Army Ammunition Plant 5.56x45 caliber ammunition;

iv.  Two rounds of Remington .223 caliber ammunition; and

v.   One round of Caracal Light Ammunition 5.56x45 caliber ammunition (collectively, the "Forfeitable Property").

b.   If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to

3

waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.  Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

b.    Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

c.    Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

d.    To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

e.    That forfeiture of the Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

### THE USAO'S OBLIGATIONS

5.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining count of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charge in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.  Defendant further agrees that he may be treated as if he had been convicted of the dismissed charge for purposes of U.S.S.G. § 1B1.2(c), regardless of whether the factual basis below would be sufficient to satisfy all elements of that charge.  Defendant waives the right to challenge the

sufficiency of the factual basis as to any element of any dismissed charge.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1.

## NATURE OF THE OFFENSES

6.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), the following must be true: (1) defendant knowingly distributed a controlled substance, namely, methamphetamine, and (2) defendant knew it was methamphetamine or some other federal controlled substance.

7.    Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below, the government must prove beyond a reasonable doubt that defendant possessed at least 50 grams of methamphetamine (actual). Defendant admits that defendant, in fact, possessed at least 50 grams of methamphetamine (actual).

8.    Defendant understands that for defendant to be guilty of the crime charged in count two, that is, conspiracy, in violation of 18 U.S.C. § 371, the following must be true: (1) beginning no later than on or around February 6, 2024 and continuing until at least on or about September 12, 2024, there was an agreement between two or more persons to engage in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A); (2) defendant

became a member of the conspiracy knowing of its object and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

9.    Defendant understands that for defendant to be guilty of the crime charged in count three, that is, engaging in the business of dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A), the following must be true: (1) defendant was willfully engaged in the business of manufacturing or dealing in firearms/ammunition within the dates specified in the indictment; and (2) defendant did not then have a license as a firearms manufacturer or dealer.

10.    Defendant understands that for defendant to be guilty of each of counts five through nine of the indictment, that is, felon in possession of a firearm or ammunition, in violation of 18 U.S.C. § 922(g)(1), the following must be true with respect to each count: (1) defendant knowingly possessed the firearm and/or ammunition identified in the count; (2) the firearm and/or ammunition had been shipped or transported from one state to another or between a foreign nation and the United States; (3) at the time defendant possessed the firearm and/or ammunition, defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and (4) at the time defendant possessed the firearm and/or ammunition, defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

11.    Defendant understands that for defendant to be guilty of count thirteen of the indictment, that is, possession of a machinegun, in violation of 18 U.S.C. § 922(o)(1), the following must be true: (1) defendant knowingly possessed a machinegun; and (2)

defendant knew that the firearm was a machinegun.  "Machinegun" includes any weapon which shoots, is designed to shoot or can be readily restored to shoot automatically more than one shot without manual reloading by a single function of the trigger.

<u>PENALTIES</u>

12.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) as charged in count one, is: life imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13.  Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) as charged in count one, is:  ten years' imprisonment, followed by a five-year period of supervised release, and a mandatory special assessment of $100.

14.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 371 is: five years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

15.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 922(a)(1)(A) is: five years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

16.  Defendant understands that the statutory maximum sentence that the Court can impose for each violation of 18 U.S.C. § 922(g)(1) is: 15 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

17.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 922(o)(1) is: 10 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

18.  Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: life imprisonment; a lifetime period of supervised release; a fine of $12,250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $1,000.

19.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised.

20.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm,

8

the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

21.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

*Defendant's Distribution of Methamphetamine*

On or about January 16, 2024, in Santa Barbara County, within the Central District of California, defendant knowingly distributed actual methamphetamine, a Schedule II controlled substance. Specifically, on that day, defendant knowingly distributed approximately 102.5 grams of actual methamphetamine, which he sold to a confidential informant ("CI") with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

At all relevant times, defendant knew the substance he distributed to the CI was a controlled substance.

*Defendant's Conspiracy to Engage, and Engagement in, the Business of Dealing in Firearms*

Beginning no later than on or about February 6, 2024, and continuing until at least September 12, 2024, in Santa Barbara County, within the Central District of California, defendant conspired with co-defendants Luke Gregory Grabeel ("Grabeel") and Felipe DeJesus Ortiz ("Ortiz") to engage in the business of dealing in firearms without a license.  Defendant was not at that time, and

10

never has been, a federally licensed firearms dealer and/or manufacturer.

In furtherance of the conspiracy, on January 19, 2024, in text messages using coded language, defendant sent the CI photographs of three firearms that he later told the CI were for sale. Defendant subsequently communicated with the CI via text messages to set up the purchase. On January 30, 2024, defendant met with the CI and placed a phone call with his firearms supplier -- Grabeel -- on speakerphone; during the call, defendant and Grabeel agreed to sell firearms to the CI at a later date. On February 6, 2024, defendant traveled with the CI to Grabeel's residence in Santa Maria, California, where defendant and Grabeel sold the CI a firearm, nine rounds of ammunition, and an extended magazine for a total price of $1,800.

On February 10, 2024, the CI texted defendant and asked if defendant had any additional firearms for sale. After discussions scheduling the deal, on February 13, 2024, defendant and an undercover agent ("UC-1") drove to Grabeel's residence in Santa Maria, California, and sold the CI and UC-1 100 rounds of ammunition, an extended magazine, and a firearm that Grabeel claimed to have assembled, for a total price of $2,800, which included $200 to be paid to defendant for arranging the deal.

On March 27, 2024, defendant told the CI in a phone call that Grabeel was building two firearms for sale. On April 3, 2024, defendant met the CI at defendant's residence, where defendant showed the CI a STEN MKII machinegun with a modified shoulder stock given to him by Grabeel. The next day, April 4, the defendant met the CI at defendant's residence and sold the modified STEN MKII machinegun

11

bearing serial number 94522 to the CI for $2,000 and sold a privately manufactured silencer to the CI for $700.

On April 9 and 15, 2024, defendant discussed with the CI via phone calls firearms Grabeel was making that would be for sale.  On April 15, 2024, defendant and Grabeel met the CI at defendant's residence, for the purpose of selling additional firearms to the CI. During the transaction and in defendant's presence, Grabeel pointed out the lack of a serial number on one of the rifles, and suggested it was illegal in California to possess a "ghost gun" or a "CNC machine," i.e., a "Computer Numerical Control" machine, which is used to create gun parts.  At the meeting, defendant and Grabeel sold the CI two privately manufactured rifles, two 30-round 5.56x45mm extended magazines, and 24 rounds of .223 caliber ammunition, for a total price of $4,200, including $200 to be paid to defendant for arranging the deal.

Between April 23 and May 22, 2024, the CI texted, called, and spoke in person with defendant about purchasing firearms.  On May 23, in a phone call, defendant told the CI that he had found a supplier who was selling a firearm from which "the serial number's been shaved off."  On the same day, defendant met the CI at defendant's Santa Maria residence, where defendant offered to sell 95 rounds of .308 ammunition to the CI, which the CI then purchased, for $100.

On May 30, 2024, in a phone call, defendant told the CI that Grabeel still had three firearms for sale.  On the same day, at his Santa Maria residence, defendant sold the CI and UC-1 two firearms for $2,500.

Between May 30 and June 3, 2024, the CI and defendant communicated by calls and texts about purchase and sale of firearms

that would be coming from Grabeel, who would obtain them from another supplier.  On June 3, defendant met the CI and an undercover agent ("UC-2") at defendant's Santa Maria residence where they were met by Grabeel, who brought three rifles into defendant's garage, which he sold to UC-2 for $6,600.  In addition, UC-2 paid defendant $200 for arranging the deal.

On August 29 and September 3, 2024, defendant and the CI communicated via phone calls and text messages regarding the sale of additional firearms.  On September 3, 2024, after meeting with a co-conspirator in Santa Maria, California, defendant and Ortiz met with the CI and UC-2 and sold them three firearms: a Mossberg MMR 7.62x39mm caliber short-barreled rifle bearing serial number MMR34235A; a stolen Ruger Mini-14 .223 caliber rifle bearing serial number 184-59988; and a privately manufactured .223 caliber rifle for $5,000 total.

On September 11 and 12, 2024, defendant and the CI communicated via text messages regarding the sale of three firearms.  On September 12, 2024, defendant and Ortiz met the CI and UC-2 at a retail storage facility in Santa Maria, California, and sold the CI and UC-2 three firearms for a total price of $6,500: a privately manufactured, .223 caliber short-barreled rifle (9.5" barrel, 25" overall); a machinegun bearing no serial number, with a 30-round capacity, .223 caliber magazine; a ROMARM/CUGIR WASR-10 7.62x39mm caliber rifle bearing serial number 1973ER3824 with a 10-round capacity, 7.62x39mm caliber magazine; a Kimber stainless LW .45ACP caliber pistol bearing serial number K672194 with a .45ACP caliber magazine; and three rounds of WOLF 7.62x39 caliber ammunition.

In all, defendant engaged in the sale to the CI, UC-1, and UC-2 of at least 16 firearms, a silencer, and ammunition.  None of the firearms were registered to defendant.  At no time during any of these sales did defendant have a federal firearms license that authorizes him to deal or manufacture firearms.  Defendant sold the firearms with the principal objective of making profits through the repeated purchase and sale of firearms and knowing that it was unlawful.

*Possession of a Machinegun*

Additionally, one of the firearms sold by defendant was a machinegun, that is, a weapon that shoots, is designed to shoot or can be readily restored to shoot automatically more than one shot without manual reloading by a single function of the trigger. Specifically, on or about April 4, 2024, in Santa Barbara County, within the Central District of California, defendant knowingly possessed a STEN MKIII, 9mm caliber machinegun, bearing serial number 94522, with a modified wooden rifle stock, which defendant then knew to be a machinegun.

*Felon in Possession*

Also in furtherance of the conspiracy, defendant knowingly possessed the following firearms and ammunition, each of which was shipped or transported in interstate commerce, on or about the following dates:

| DATE | ITEM |
|---|---|
| 2/6/2024 | Nine rounds of Industries Valcartier Inc. 5.56x45mm caliber ammunition |
| 4/04/2024 | A STEN MKIII, 9mm caliber machinegun, bearing serial number 94522 with a modified rifle stock |

| 5/23/2024 | (1) 53 rounds of Fiocchi .308 caliber ammunition;<br><br>(2) 36 rounds of Tulammo .308 caliber ammunition;<br><br>(3) Three rounds of Federal Premium Ammunition .308 caliber ammunition;<br><br>(4) Two rounds of Lake City .308 caliber ammunition; and<br><br>(5) One round of Compania Anonima Venezolana de Industrias Militares .308 caliber ammunition. |
|---|---|
| 5/30/2024 | A Glock, model 17Gen4, 9mm caliber pistol, bearing serial number BKPD943 |
| 9/3/2024 | (1) A Mossberg MMR, 7.62x39mm caliber short-barreled rifle, bearing serial number MMR34235A;<br><br>(2) A Ruger Mini-14, .223 caliber rifle, bearing serial number 184-59988; and<br><br>(3) Five rounds of Federal Premium Ammunition .223 caliber ammunition. |
| 9/12/2024 | (1) A ROMARM/CUGIR WASR-10, 7.62x39mm caliber rifle, bearing serial number 1973ER3824;<br><br>(2) A Kimber Stainless LW .45ACP caliber pistol, bearing serial number K672194; and<br><br>(3) Three rounds of Tula Cartridge Works 7.62x39mm caliber ammunition. |

At the time of defendant's possession of the firearms and ammunition on the above mentioned dates, defendant knew that he had previously been convicted of a felony, punishable by a term of imprisonment exceeding one year, namely, Infliction of Corporal Injury on a Spouse / Cohabitant, in violation of California Penal Code Section 273.5(a), in the Superior Court for the State of California, County of Santa Barbara, Case No. 23CR06768, on or about November 8, 2023.

SENTENCING FACTORS

22.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and the maximum set by statute for the crimes of conviction.

23.   Except as set forth in paragraph 4 above, defendant and the USAO have no agreement as to the appropriate sentence or the applicable Sentencing Guidelines factors.  Except as set forth in paragraph 4, both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history score and category, base offense level, specific offense characteristics, adjustments, departures, and variances.

24.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

25.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel – and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF APPEAL OF CONVICTION

26.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, or an appeal on the grounds specifically reserved in paragraph 3 above, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant

17

is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

27.  Defendant agrees that defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

28.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of

facts provided herein is insufficient to support defendant's pleas of guilty.

29. This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

<u>WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS</u>

30. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

Defendant further agrees that this paragraph of the agreement is severable. Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept his guilty plea, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement. Defendant also agrees that his waivers are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEAS</u>

31. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a

claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

32.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

## EFFECTIVE DATE OF AGREEMENT

33.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

1

<u>BREACH OF AGREEMENT</u>

2    34.  Defendant agrees that if defendant, at any time after the

3    effective date of this agreement, knowingly violates or fails to

4    perform any of defendant's obligations under this agreement ("a

5    breach"), the USAO may declare this agreement breached.  All of

6    defendant's obligations are material, a single breach of this

7    agreement is sufficient for the USAO to declare a breach, and

8    defendant shall not be deemed to have cured a breach without the

9    express agreement of the USAO in writing.  If the USAO declares this

10   agreement breached, and the Court finds such a breach to have

11   occurred, then: (a) if defendant has previously entered guilty pleas

12   pursuant to this agreement, defendant will not be able to withdraw

13   the guilty pleas, and (b) the USAO will be relieved of all its

14   obligations under this agreement.

15   35.  Following the Court's finding of a knowing breach of this

16   agreement by defendant, should the USAO choose to pursue any charge

17   that was dismissed as a result of this agreement, then:

18        a.   Defendant agrees that any applicable statute of

19   limitations is tolled between the date of defendant's signing of this

20   agreement and the filing commencing any such action.

21        b.   Defendant waives and gives up all defenses based on

22   the statute of limitations, any claim of pre-indictment delay, or any

23   speedy trial claim with respect to any such action, except to the

24   extent that such defenses existed as of the date of defendant's

25   signing this agreement.

26   //

27   //

28

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

36.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

37.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

38.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney,

or the Court -- can make a binding prediction or promise regarding

the sentence defendant will receive, except that it will be between

the statutory mandatory minimum and the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

39.  Defendant understands that, except as set forth herein,

there are no promises, understandings, or agreements between the USAO

and defendant or defendant's attorney, and that no additional

promise, understanding, or agreement may be entered into unless in a

writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

40.  The parties agree that this agreement will be considered

part of the record of defendant's guilty plea hearing as if the

entire agreement had been read into the record of the proceeding.

//

//

//

//

1    AGREED AND ACCEPTED

2    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
3    CALIFORNIA
     TODD BLANCHE
4    Deputy Attorney General

5    BILAL A. ESSAYLI
     First Assistant United States
6    Attorney

7

     /s/                       1/12/2026
8    THI HOANG HO              Date
     MARIAM KALOUSTIAN
9    Assistant United States Attorneys
     ROBERT K. QUEALY
10   Special Assistant United States
     Attorney
11

12   MAXIMO JORDAN NAVARRETE-CONTRERAS    1-9-2026 Date
     Defendant
13

14   CHARLES C. BROWN           1-9-2026 Date
     Attorney for Defendant
15   MAXIMO JORDAN NAVARRETE-CONTRERAS

24

1                                CERTIFICATION OF DEFENDANT

2           I have read this agreement in its entirety.  I have had enough

3      time to review and consider this agreement, and I have carefully and

4      thoroughly discussed every part of it with my attorney.  I understand

5      the terms of this agreement, and I voluntarily agree to those terms.

6      I have discussed the evidence with my attorney, and my attorney has

7      advised me of my rights, of possible pretrial motions that might be

8      filed, of possible defenses that might be asserted either prior to or

9      at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10     of relevant Sentencing Guidelines provisions, and of the consequences

11     of entering into this agreement.  No promises, inducements, or

12     representations of any kind have been made to me other than those

13     contained in this agreement.  No one has threatened or forced me in

14     any way to enter into this agreement.  I am satisfied with the

15     representation of my attorney in this matter, and I am pleading

16     guilty because I am guilty of the charges and wish to take advantage

17     of the promises set forth in this agreement, and not for any other

18     reason.

19

20     _____         _____
       MAXIMO JORDAN NAVARRETE-CONTRERAS       Date
21     Defendant

22

23

24

25

26

27

28

                                      25

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MAXIMO JORDAN NAVARRETE-CONTRERAS's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          1-9-2026
CHARLES C. BROWN                          Date
Attorney for Defendant
MAXIMO JORDAN NAVARRETE-CONTRERAS