TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
THI HOANG HO (Cal. Bar No. 293978)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0596
    Facsimile: (213) 894-0141
    E-mail:   Thi.Ho@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:24-cr-00734-SVW-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: May 11, 2026 |
| MAXIMO JORDAN NAVARRETE-CONTRERAS, | Hearing Time: 11:00 a.m. |
| | Location:   Courtroom of the Hon. Stephen V. Wilson |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Thi Hoang Ho, hereby files its Sentencing Position.

//

//

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 27, 2026                    Respectfully submitted,

                                         TODD BLANCHE
                                         Acting Attorney General

                                         BILAL A. ESSAYLI
                                         First Assistant United States
                                         Attorney

                                         ALEXANDER B. SCHWAB
                                         Assistant United States Attorney
                                         Acting Chief, Criminal Division


                                              /s/
                                         THI HOANG HO
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

2

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................2

          1.   Defendant's Distribution of Methamphetamine..........2

          2.   Defendant's Conspiracy to Engage, and Engagement in, the Business of Dealing in Firearms..............2

          3.   Possession of a Machinegun...........................6

          4.   Felon in Possession..................................6

III.  THE GUIDELINES CALCULATION....................................8

    A.   Defendant's Combined Adjusted Offense Level...............8

    B.   The USPO's Calculation of Defendant's Total Offense Level....................................................9

    C.   Defendant Is Not Entitled to an Additional One-Point Reduction for Acceptance of Responsibility Under § 3E1.1(b)................................................9

IV.   THE GOVERNMENT'S RECOMMENDATION..............................11

    A.   Nature and Circumstances of the Offense.................11

    B.   History and Characteristics of Defendant................12

    C.   Need to Avoid Unwarranted Disparities...................14

V.    The Government Agrees with the USPO's Supervised Release Recommendation..............................................14

VI.   CONCLUSION...................................................14

## TABLE OF AUTHORITIES

**Federal Cases**

Gall v. United States,
     552 U.S. 38 (2007) ........................................... 14

United States v. Ayala-Nicanor,
     659 F.3d 744 (9th Cir. 2011) ................................ 13

United States v. Treadwell,
     593 F.3d 990 (9th Cir. 2010) ................................ 14

**Federal Statutes**

18 U.S.C. § 922 ................................................... 8

18 U.S.C. § 3553 ........................................ 9, 11, 13, 14

21 U.S.C. § 841 ............................................... 8, 11

**State Statutes**

Cal. Penal Code § 273.5 .......................................... 7

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

On January 6, 2026, the morning of the scheduled trial in this case, after his proffered entrapment defense was excluded by the Court, defendant Maximo Jordan Navarrete-Contreras ("defendant") advised the government that he would conditionally plead guilty.  <u>See</u> Dkt. 121.  Pursuant to a plea agreement in which defendant reserved his right to appeal the ruling on his entrapment defense, defendant pleaded guilty on January 12, 2025 to counts one through nine and thirteen of the indictment, which charge defendant with distribution of methamphetamine, a Schedule II controlled substance (count one); conspiracy (count two); engaging in the business of dealing in firearms (count three); felon in possession of a firearm or ammunition (counts five through nine); and possession of a machinegun (thirteen).  <u>See</u> Dkt. 123 (Plea Agreement); Dkt. 124.

The United States Probation and Pretrial Services Office ("USPO") has filed a presentence investigation report (Dkt. 159, hereinafter the "PSR"), calculating a total offense level of 29 and a Criminal History Category of III.  Based on this, the USPO calculates defendant's Guidelines range as 108 to 135 months.  The USPO recommends the mandatory minimum sentence of 10 years, specifically: a sentence of 120 months' imprisonment on each of counts one, four through nine, and thirteen, and 60 months' imprisonment on counts two and three of the indictment, all to be served concurrently.  Dkt. 158 at 1-2.

For the reasons discussed herein, the government submits that the total offense level is 30.  Based on the criminal history category of III calculated by the USPO, defendant's Guidelines range

is 121 to 151 months' imprisonment.  The government respectfully recommends that defendant be sentenced to the middle of the Guidelines range corresponding to an offense level of 30, *i.e.* 136 months of imprisonment, followed by five years of supervised release.

**II.    STATEMENT OF FACTS**

The facts relevant to sentencing are accurately set forth in the PSR and the parties' Plea Agreement.  See PSR ¶¶ 16-43; Plea Agreement pp. 10-15.  As set forth in the parties' Plea Agreement, the relevant facts are as follows:

1.    Defendant's Distribution of Methamphetamine

On or about January 16, 2024, in Santa Barbara County, within the Central District of California, defendant knowingly distributed actual methamphetamine, a Schedule II controlled substance. Specifically, on that day, defendant knowingly distributed approximately 102.5 grams of actual methamphetamine, which he sold to a confidential informant ("CI") with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

At all relevant times, defendant knew the substance he distributed to the CI was a controlled substance.

2.    Defendant's Conspiracy to Engage, and Engagement in, the Business of Dealing in Firearms

Beginning no later than on or about February 6, 2024, and continuing until at least September 12, 2024, in Santa Barbara County, within the Central District of California, defendant conspired with co-defendants Luke Gregory Grabeel ("Grabeel") and Felipe DeJesus Ortiz ("Ortiz") to engage in the business of dealing in firearms without a license.  Defendant was not at that time, and

2

never has been, a federally licensed firearms dealer and/or manufacturer.

In furtherance of the conspiracy, on January 19, 2024, in text messages using coded language, defendant sent the CI photographs of three firearms that he later told the CI were for sale. Defendant subsequently communicated with the CI via text messages to set up the purchase. On January 30, 2024, defendant met with the CI and placed a phone call with his firearms supplier -- Grabeel -- on speakerphone; during the call, defendant and Grabeel agreed to sell firearms to the CI at a later date. On February 6, 2024, defendant traveled with the CI to Grabeel's residence in Santa Maria, California, where defendant and Grabeel sold the CI a firearm, nine rounds of ammunition, and an extended magazine for a total price of $1,800.

On February 10, 2024, the CI texted defendant and asked if defendant had any additional firearms for sale. After discussions scheduling the deal, on February 13, 2024, defendant and an undercover agent ("UC-1") drove to Grabeel's residence in Santa Maria, California, and sold the CI and UC-1 100 rounds of ammunition, an extended magazine, and a firearm that Grabeel claimed to have assembled, for a total price of $2,800, which included $200 to be paid to defendant for arranging the deal.

On March 27, 2024, defendant told the CI in a phone call that Grabeel was building two firearms for sale. On April 3, 2024, defendant met the CI at defendant's residence, where defendant showed the CI a STEN MKII machinegun with a modified shoulder stock given to him by Grabeel. The next day, April 4, the defendant met the CI at defendant's residence and sold the modified STEN MKII machinegun

3

bearing serial number 94522 to the CI for $2,000 and sold a privately manufactured silencer to the CI for $700.

On April 9 and 15, 2024, defendant discussed with the CI via phone calls firearms Grabeel was making that would be for sale. On April 15, 2024, defendant and Grabeel met the CI at defendant's residence, for the purpose of selling additional firearms to the CI. During the transaction and in defendant's presence, Grabeel pointed out the lack of a serial number on one of the rifles, and suggested it was illegal in California to possess a "ghost gun" or a "CNC machine," i.e., a "Computer Numerical Control" machine, which is used to create gun parts. At the meeting, defendant and Grabeel sold the CI two privately manufactured rifles, two 30-round 5.56x45mm extended magazines, and 24 rounds of .223 caliber ammunition, for a total price of $4,200, including $200 to be paid to defendant for arranging the deal.

Between April 23 and May 22, 2024, the CI texted, called, and spoke in person with defendant about purchasing firearms. On May 23, in a phone call, defendant told the CI that he had found a supplier who was selling a firearm from which "the serial number's been shaved off." On the same day, defendant met the CI at defendant's Santa Maria residence, where defendant offered to sell 95 rounds of .308 ammunition to the CI, which the CI then purchased, for $100.

On May 30, 2024, in a phone call, defendant told the CI that Grabeel still had three firearms for sale. On the same day, at his Santa Maria residence, defendant sold the CI and UC-1 two firearms for $2,500.

Between May 30 and June 3, 2024, the CI and defendant communicated by calls and texts about purchase and sale of firearms

4

that would be coming from Grabeel, who would obtain them from another supplier.  On June 3, defendant met the CI and an undercover agent ("UC-2") at defendant's Santa Maria residence where they were met by Grabeel, who brought three rifles into defendant's garage, which he sold to UC-2 for $6,600.  In addition, UC-2 paid defendant $200 for arranging the deal.

On August 29 and September 3, 2024, defendant and the CI communicated via phone calls and text messages regarding the sale of additional firearms.  On September 3, 2024, after meeting with a co-conspirator in Santa Maria, California, defendant and Ortiz met with the CI and UC-2 and sold them three firearms: a Mossberg MMR 7.62x39mm caliber short-barreled rifle bearing serial number MMR34235A; a stolen Ruger Mini-14 .223 caliber rifle bearing serial number 184-59988; and a privately manufactured .223 caliber rifle for $5,000 total.

On September 11 and 12, 2024, defendant and the CI communicated via text messages regarding the sale of three firearms.  On September 12, 2024, defendant and Ortiz met the CI and UC-2 at a retail storage facility in Santa Maria, California, and sold the CI and UC-2 three firearms for a total price of $6,500: a privately manufactured, .223 caliber short-barreled rifle (9.5" barrel, 25" overall); a machinegun bearing no serial number, with a 30-round capacity, .223 caliber magazine; a ROMARM/CUGIR WASR-10 7.62x39mm caliber rifle bearing serial number 1973ER3824 with a 10-round capacity, 7.62x39mm caliber magazine; a Kimber stainless LW .45ACP caliber pistol bearing serial number K672194 with a .45ACP caliber magazine; and three rounds of WOLF 7.62x39 caliber ammunition.

In all, defendant engaged in the sale to the CI, UC-1, and UC-2 of at least 16 firearms, a silencer, and ammunition.  None of the firearms were registered to defendant.  At no time during any of these sales did defendant have a federal firearms license that authorizes him to deal or manufacture firearms.  Defendant sold the firearms with the principal objective of making profits through the repeated purchase and sale of firearms and knowing that it was unlawful.

### 3.    Possession of a Machinegun

Additionally, one of the firearms sold by defendant was a machinegun, that is, a weapon that shoots, is designed to shoot or can be readily restored to shoot automatically more than one shot without manual reloading by a single function of the trigger. Specifically, on or about April 4, 2024, in Santa Barbara County, within the Central District of California, defendant knowingly possessed a STEN MKIII, 9mm caliber machinegun, bearing serial number 94522, with a modified wooden rifle stock, which defendant then knew to be a machinegun.

### 4.    Felon in Possession

Also in furtherance of the conspiracy, defendant knowingly possessed the following firearms and ammunition, each of which was shipped or transported in interstate commerce, on or about the following dates:

| DATE | ITEM |
|---|---|
| 2/6/2024 | Nine rounds of Industries Valcartier Inc. 5.56x45mm caliber ammunition |
| 4/04/2024 | A STEN MKIII, 9mm caliber machinegun, bearing serial number 94522 with a modified rifle stock |

6

| 5/23/2024 | (1) 53 rounds of Fiocchi .308 caliber ammunition;<br><br>(2) 36 rounds of Tulammo .308 caliber ammunition;<br><br>(3) Three rounds of Federal Premium Ammunition .308 caliber ammunition;<br><br>(4) Two rounds of Lake City .308 caliber ammunition; and<br><br>(5) One round of Compania Anonima Venezolana de Industrias Militares .308 caliber ammunition. |
|---|---|
| 5/30/2024 | A Glock, model 17Gen4, 9mm caliber pistol, bearing serial number BKPD943 |
| 9/3/2024 | (1) A Mossberg MMR, 7.62x39mm caliber short-barreled rifle, bearing serial number MMR34235A;<br><br>(2) A Ruger Mini-14, .223 caliber rifle, bearing serial number 184-59988; and<br><br>(3) Five rounds of Federal Premium Ammunition .223 caliber ammunition. |
| 9/12/2024 | (1) A ROMARM/CUGIR WASR-10, 7.62x39mm caliber rifle, bearing serial number 1973ER3824;<br><br>(2) A Kimber Stainless LW .45ACP caliber pistol, bearing serial number K672194; and<br><br>(3) Three rounds of Tula Cartridge Works 7.62x39mm caliber ammunition. |

At the time of defendant's possession of the firearms and ammunition on the above mentioned dates, defendant knew that he had previously been convicted of a felony, punishable by a term of imprisonment exceeding one year, namely, Infliction of Corporal Injury on a Spouse / Cohabitant, in violation of California Penal Code Section 273.5(a), in the Superior Court for the State of California, County of Santa Barbara, Case No. 23CR06768, on or about November 8, 2023.

7

## III. THE GUIDELINES CALCULATION

### A.    Defendant's Combined Adjusted Offense Level

The government largely agrees with the USPO's calculation of the combined adjusted offense level, as follows:

**Group One**

Distribution of Methamphetamine (21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii))

| | | |
|---|---|---|
| Base Offense Level: | 30 | U.S.S.G. § 2D1.1(a)(5), (c)(5) |
| Group One Subtotal | 30 | |

**Group Two**

Felon/Prohibited Person in Possession of Firearm, (18 U.S.C. §§ 922(g)(1), 922(g)(5))

| | | |
|---|---|---|
| Base Offense Level: | 22 | U.S.S.G. § 2K2.1(a)(3) |
| Specific Offense Characteristics: | | |
| – 8-24 firearms | +4 | U.S.S.G. § 2K2.1(b)(1)(B) |
| – Knowledge/willful blindness that firearm involved in the offense was not marked with a serial number | +4 | U.S.S.G. § 2K2.1(b)(4)(B) |
| Group Two Subtotal | 29[1] | |
| **Multiple Counts:** **(Two Units)** | +2 | U.S.S.G. § 3D1.4 |
| **Combined Adjusted Offense Level** | 32 | |

---

[1] U.S.S.G. § 2K2.1(b) caps the cumulative offense level from the application of subsections (b)(1) through (b)(5) at 29, except if subsection (b)(3)(A) applies.

PSR ¶¶ 56-94.

**B.    The USPO's Calculation of Defendant's Total Offense Level**

From the combined adjusted offense level of 32, the USPO deducted three (3) points for acceptance of responsibility under U.S.S.G. § 3E1.1 to arrive at a <u>total offense level of 29</u>.  <u>Id.</u> ¶¶ 96-97.

| | | | |
|---|---|---|---|
| Combined Adjusted Offense Level | 32 | | |
| Acceptance of Responsibility | -2 | U.S.S.G. § 3E1.1(a) | |
| | -1 | U.S.S.G. § 3E1.1(b) | |
| **Total Offense Level** | **29** | | |

Defendant has a total criminal history score of 6, which places him in Criminal History Category III.  <u>Id.</u> ¶¶ 114-115.  Based on a total offense level of 29 and a Criminal History Category of III, the USPO calculated defendant's Guidelines range to be 108 to 135 months' incarceration and five years to a life term of supervised release. <u>See</u> <u>id.</u> ¶¶ 187, 190; <u>see also</u> U.S.S.G. §§ 5A, 5D1.1, 5D1.2(a)(3); 18 U.S.C. § 3553(f).

**C.    Defendant Is Not Entitled to an Additional One-Point Reduction for Acceptance of Responsibility Under § 3E1.1(b)**

As previously mentioned, the government largely agrees with the USPO's calculation of the Guidelines range, <u>except for</u> the additional one-point reduction for acceptance of responsibility under § 3E1.1(b).  Defendant is not entitled to the additional reduction, as he did not assist authorities in the prosecution of his misconduct by timely notifying the government of his intention to plead guilty. Section 3E1.1(b) provides, in pertinent part:

9

> [U]pon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.  The term "preparing for trial" means substantive preparations taken to present the government's case against the defendant to a jury (or judge, in the case of a bench trial) at trial. "Preparing for trial" is ordinarily indicated by actions taken close to trial, such as preparing witnesses for trial, in limine motions, proposed voir dire questions and jury instructions, and witness and exhibit lists.

Id. (emphasis added).

Here, defendant did not timely notify the government of his attention to enter a guilty plea.  In fact, defendant did not indicate his intention to plead guilty until the very morning of the scheduled trial in this case, just prior to jury empanelment.  See Dkt. 121, 124.  Leading up to the trial date, defendant dragged his feet for over a year, and then just a month before trial raised a defense of entrapment, for which the Court found there was no basis.  See Dkt. 131.  Because of defendant's delay and his indication that he intended to take the case to trial, the government made substantive preparations for trial, including preparing witnesses, filing proposed voir dire questions (Dkt. 111), jury instructions (Dkt. 112, 113, 116), witness and exhibit lists (Dkt. 118, 119), and motions in limine (Dkt. 92, 93), the latter of which required extensive briefing by the government against defendant's baseless defense of entrapment (Dkt. 109).  Given these facts – and defendant's delay in taking accountability – the government does not move for the additional one-point reduction under § 3E1.1(b).

Accordingly, the government calculates defendant's total offense level as follows:

| | | |
|---|---|---|
| Combined Adjusted Offense Level | 32 | |
| Acceptance of Responsibility | -2 | U.S.S.G. § 3E1.1(a) |
| **Total Offense Level** | **30** | |

Based on a criminal history category of III, and a total offense level of 30, defendant's Guidelines range is 121 to 151 months of incarceration.  Defendant is subject to a mandatory minimum of 120 months, or 10 years, of incarceration pursuant to 21 U.S.C. § 841(b)(1)(A)(viii).  See also PSR ¶ 186.

**IV.   THE GOVERNMENT'S RECOMMENDATION**

Based on the foregoing calculation, and the PSR, the government recommends that defendant be sentenced to a 136-month period of incarceration, followed by a five-year term of supervised release. This recommended sentence falls in the middle of the applicable Guidelines range at a total offense level of 30 and criminal history category III.  A sentence of 136 months' imprisonment is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

**A.   Nature and Circumstances of the Offense**

The government's recommended sentence is appropriate to account for the seriousness of defendant's criminal conduct.  First, defendant trafficked in a large quantity of methamphetamine, a dangerous drug that he knew or should have known would cause harm to the community.  See Ex. A.

Second, defendant conspired with his co-defendants to engage in the business of dealing in firearms without a license, knowing full well that he is prohibited from possessing firearms, let alone selling them.  See Ex. B.  Specifically, defendant sold and/or brokered the sale of approximately 17 guns, a silencer, and ammunition.  PSR ¶ 40.  None of the firearms were registered to defendant, who also did not have a license to sell firearms.  Of the 17 guns, one was a machinegun and approximately 10 had no serial number.[2]  See PSR ¶¶ 16-43; Plea Agreement pp. 10-15; see also Ex. C.

The unlawful possession and sale of firearms risk public safety, undermine the rule of law, and threaten to harm innocent bystanders.  Further, machineguns are particularly dangerous because of the damage they can inflict through their ability to fire multiple shots with a single pull of the trigger.  See Ex. C.

**B.    History and Characteristics of Defendant**

Defendant's history and circumstances also warrant the government's recommended sentence.  Notably, defendant's criminal history reflects a pattern of increasing seriousness, including prior convictions involving controlled substances and firearms, which underscores the need for a meaningful custodial sentence.

To start, defendant sustained, in 2014 and 2015, convictions for possession of a controlled substance and possession of drug paraphernalia, respectively.  PSR ¶¶ 104-105.  These convictions were followed by vandalism and theft convictions in 2016.  Id. ¶¶ 107-108.  Then, in 2017, defendant obstructed a public officer.  Id. ¶ 109.  In 2021, he was convicted of carrying a loaded firearm in public, and

---

[2] The silencer also did not have a serial number.

12

twice of threatening a crime with intent to terrorize. Id. ¶¶ 110-112. Finally, in 2023, a few months before the offense conduct in this case, defendant was convicted of infliction of corporal injury on a spouse/cohabitant, a felony. While defendant was on probation for this crime of violence, United States v. Ayala-Nicanor, 659 F.3d 744, 750 (9th Cir. 2011), he sold the methamphetamine and firearms for which he is charged in the indictment. For the same reasons a substantial sentence is required to reflect the seriousness of the offenses, a substantial sentence is required for specific deterrence. See 18 U.S.C. § 3553(a)(2)(A)-(B).

Defendant's criminal history is concerning, but the government acknowledges there are mitigating factors in this case. Defendant lost his mother in a tragic accident at a young age and subsequently lost his father due to the latter's substance abuse issues, which appear to have stemmed from the car accident that killed his mother. PSR ¶¶ 140, 142. From there, it appears defendant had a difficult childhood and adolescence, suffering from sexual abuse, periods of homelessness, and later, his own substance abuse issues. Id. ¶¶ 141-144, 155-169. Defendant's substance abuse cuts both ways: while it is a mitigating factor, it also reflects his increased risk of recidivism and a corresponding need for deterrence.

On balance, the aggravating factors in this case outweigh the mitigating factors. Defendant's crimes were serious and reflect a trajectory of increasing severity of criminality. Defendant's criminal network also appears to be wide, as he appeared ready and willing to find new suppliers, to sell additional guns, at whatever the cost to the community. The government submits that a mid-range sentence of 136 months' imprisonment properly balances the

13

aggravating and mitigating factors and is sufficient but no greater than necessary to accomplish the legitimate ends of sentencing.

### C.    Need to Avoid Unwarranted Disparities

In fashioning a sentence, the Court must minimize sentencing disparities among similarly situated defendants.  18 U.S.C. § 3553(a)(6).  One way of doing so is to sentence defendants within the Guidelines range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity'[.]"); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  As such, the United States' recommended sentence avoids an unwarranted disparity with similarly situated defendants.

### V.    The Government Agrees with the USPO's Supervised Release Recommendation

The government recommends that the Court impose a five-year period of supervised release, which is consistent with the USPO's recommendation.  See Dkt. 158 at 2.  The government agrees with the supervised release conditions outlined in the USPO's recommendation letter.  Id. at 2-3.

### VI.  CONCLUSION

For the foregoing reasons, the government recommends that defendant be sentenced as follows: (1) a 136-month term of imprisonment; (2) a five-year period of supervised release; (3) a special assessment of $1,000; and (4) waiver of all fines.

14